136 Ind. App. 184 (1964)
197 N.E.2d 773
METHODIST HOSPITAL OF INDIANA, INC.
v.
TOWN & COUNTRY MUTUAL INSURANCE COMPANY.
No. 19,949.
Court of Appeals of Indiana.
Filed April 27, 1964.
Rehearing denied June 4, 1964.
*186 William S. Hall and Dowden, Denny, Caughran & Lowe, of Indianapolis, for appellant.
C. Wendell Martin, and Bredell, Cooper & Martin, of Indianapolis, for appellee.
FAULCONER, J.
This is an appeal by plaintiff-appellant, Methodist Hospital of Indiana, Inc.,[1] which refused to plead over after the trial court sustained separate demurrers filed by the defendant-appellee, Town & Country Mutual Insurance Company, to both paragraphs of plaintiff-appellant's amended complaint.
The facts generally, as disclosed by plaintiff's amended complaint in two paragraphs, are that one James Murphy was injured on July 4, 1958, while a passenger in an automobile being driven by a third person, with the permission of the owner who was insured by appellee; that James Murphy was admitted to appellant-Hospital on July 5, 1958, and remained there until September 5, 1958, where he was treated for such injuries; and that he incurred charges for such care in the amount of $1,957.95.
That on the 25th day of August, 1958, James Murphy assigned, in writing, to appellant the sum of $1,664.30 "payable out of and from any recovery, judgment, settlement, insurance, or other moneys paid or payable to me by any person, firm, corporation or insurance *187 company by reason of said accident or the injuries or damages caused thereby."
That thereafter on the 26th day of August, 1958, a copy of the assignment was forwarded to appellee by appellant-Hospital.
That some time between January 1, 1960, and July 12, 1960, appellee made the following payments to the said James Murphy: the sum of $1,000, being the maximum liability under the medical payments provision of the policy of insurance, and the sum of $11,500 in settlement of the liability coverage under such policy of insurance.
That thereafter (the record before us fails to show the date) the said James Murphy paid to appellant-Hospital the sum of $1,305.30, leaving unpaid a balance of $652.65.
There is no dispute that the automobile was being driven with the permission of the named insured; that James Murphy came within the terms of the medical payments provision, or that the maximum benefits under said provision were $1,000.
Appellee filed separate demurrers alleging that Paragraph I and Paragraph II of appellant's amended complaint do not state facts sufficient to constitute a cause of action against appellee. Appellee's memorandums to its demurrers to Paragraphs I and II of appellant's amended complaint allege, in identical language, that said paragraph prays judgment on account of defendant-appellee's failure to honor an assignment of a claim for personal injury to one James Murphy; that said assignment, at that time and at the present time, was, and is, invalid and unenforceable under Indiana law as it is against public policy of this State; that no claim for injury to the person which would not survive the *188 death of the assignor is assignable and that the claim of James Murphy would not have survived his death.
In each memorandum of said demurrers appellee further points out that even if the medical payments portion of the claim of plaintiff-appellant's assignor was assignable at the time of this assignment, the amended complaint shows on its face that such portion has been paid by appellant-Hospital's assignor and such payment is a complete defense to this action regarding the assignment of the claim for medical payments insurance benefits.
The trial court having sustained appellee's demurrers and appellant refusing to amend its complaint or plead over, judgment was entered "that the plaintiff take nothing by this action...."
Appellant assigns as error the trial court's ruling sustaining the demurrers to Paragraphs I and II of appellant's amended complaint.
Each paragraph of a complaint must be tested by its own averments. Lake Erie, etc. R. Co. v. Holland (1904), 162 Ind. 406, 414, 69 N.E. 138, 63 L.R.A. 948; Citizens Tel. Co. v. Fort Wayne, etc., R. Co. (1913), 53 Ind. App. 230, 233, 100 N.E. 309; Lake Erie, etc. R. Co. v. Moore (1908), 42 Ind. App. 32, 36, 81 N.E. 85, 84 N.E. 506; 23 I.L.E., Pleading, § 38, p. 276.
Inasmuch as the policy limit under the medical payments provision is, by agreement, limited to $1,000, it appears, from a reading of the briefs and the record before us pertaining to Paragraph I of the amended complaint, the issue here is not so much its assignability but the full payment of the debt.
Appellant, in Point I of the argument section of its brief, argues that Paragraph I of its amended complaint *189 is good as against the demurrer because it alleges the assignment to appellant by the patient of a fund due the patient by appellee under contract and money claims arising out of contract are assignable. Appellee fails to argue the assignability of the claim under the medical payments provision of said policy upon which Paragraph I of said amended complaint is based and takes no issue with appellant's argument that rights ex contractu are assignable, but argues that Paragraph I of the amended complaint shows on its face that appellant-Hospital has already received from assignor-Murphy $1,305.30 on its bill, and further shows that medical pay coverage was limited to $1,000.
Payment of a debt to the assignee entitled thereto constitutes a valid discharge of the indebtedness. 3 I.L.E., Assignments, § 35, p. 117; 6 C.J.S., Assignments, § 98a (1), p. 1153.
Generally, the assignee can take no greater right than was possessed by his assignor. Southern Surety Co. v. Merchants, etc., Bank (1932), 203 Ind. 173, 194, 176 N.E. 846; Foltz v. Wert (1885), 103 Ind. 404, 409, 2 N.E. 950; 3 I.L.E., Assignments, § 33, p. 115.
The rights of appellant-Hospital, as assignee, were the same as the rights held by James Murphy, as assignor, against appellee under the medical payments provision of appellee's policy. Therefore, inasmuch as James Murphy was limited to recovery of the maximum benefits under the medical payments provision of the insurance policy, it follows logically that appellant-Hospital would likewise be subject to such limitation.
An examination of Paragraph I of appellant's amended complaint shows an allegation by appellant that the *190 maximum benefit under the medical payments benefit provision of said policy was $1,000. It also reveals an allegation that appellee paid to James Murphy $1,000, "being the amount of its maximum liability under the said medical payments provision" and also an allegation that "payment was made to the plaintiff [appellant-Hospital] in the amount of $1,305.30, leaving a balance due the plaintiff of $652.65 which is wholly unpaid." (Emphasis supplied.)
Appellant argues that since a demurrer admits all facts well pleaded and Paragraph I of appellant's amended complaint alleges that only $104.42 of the $1,000 medical benefits were returned to appellant-Hospital by the patient, this was admitted by the demurrer.
Appellant arrives at this figure in rhetorical paragraph 11 of Paragraph I of its amended complaint which, in pertinent part, is as follows:
"By reason of the commingling of such funds $1,000.00 of the $12,500.00 commingled fund represented the medical benefits payable under the insurance policy and thereby out of any distribution of such funds 1000/12,500 represented a disbursement of the medical benefits, and plaintiff believes and therefore avers that 1000/12,500 of the $1,305.30 paid to it namely, $104.42, was a disbursement to it of the medical benefits, thereby $895.58 of the medical benefits were paid to others."
A demurrer for want of facts admits as true all facts that are well or sufficiently pleaded, but it does not admit conclusions of law and does not admit all the conclusions which may be drawn from such facts by the pleader. Greathouse v. Board, etc. (1926), 198 Ind. 95, 108, 151 N.E. 411; Western *191 Union Telegraph Company v. Taggart, Auditor et al. (1895), 141 Ind. 281, 283, 40 N.E. 1051, 60 L.R.A. 671; Bell v. New York Life Insurance Company (1963), 134 Ind. App. 614, 190 N.E.2d 432, 435; Morton v. City of Aurora (1933), 96 Ind. App. 203, 209, 182 N.E. 259 (Transfer denied.)
In the case of The State ex rel. Padgett, Prosecuting Attorney v. Foulkes et al. (1884), 94 Ind. 493, at page 497, the court said:
"Where there are contradictory allegations, we must construe the pleading against the pleader, for upon him rests the burden of affirmatively stating a cause of action or defence, and if he annihilates one allegation by another, nothing is affirmed."
It is specifically alleged in Paragraph I of the amended complaint that appellant received a sum in excess of the maximum amount recoverable under the medical payments provision of said policy.
To hold that the demurrer admitted as true appellant's mathematical equation along with its conclusion that only $104.42 of the $1,305.30 applied to the bill of appellant would, at best, create conflicting allegations in the same paragraph of complaint.
We, therefore, find no error in the trial court's sustaining the demurrer to Paragraph I of appellant's amended complaint for want of facts.
We now consider appellant's second assignment of error, i.e., the ruling by the trial court sustaining appellee's demurrer to Paragraph II of appellant's amended complaint.
Under Acts 1937, ch. 292 § 2, § 2-403, Burns' 1946 Replacement, an action for personal injury survives to *192 a limited extent in event of the death of the wrongdoer, but not in the event of the death of the person injured. Allen v. Whitehall Pharmacal Co. (1953), D.C., 115 F. Supp. 7.
Appellant first contends that this cause should be governed by the 1959 amendment to Burns' § 2-403, being Acts 1959, ch. 309, § 1, which amendment provided for the survival of actions for personal injuries, to a limited extent, in the event the person injured dies thereafter from causes other than the personal injuries so received. Appellant argues that the 1959 amendment was retroactive. This court, as well as the Supreme Court, recently ruled otherwise on this precise question, and held that the 1959 amendment was not retroactive. Stewart v. Marson Construction Corp et al. (1963), 244 Ind. 134, 191 N.E.2d 320, 321; Malone, Admr. v. Conner (1963), 135 Ind. App. 167, 189 N.E.2d 590, 591 (Transfer denied).
The test has been said to be that if the cause of action is not one which would survive, it is not assignable.
"Courts stating this rule frequently assert that the test of assignability of a cause of action is its survival, and, since a personal injury does not, in the absence of a statute, survive, it is not assignable. In addition, other reasons for nonassignability are sometimes given  for example, that assignment is barred by statute, or is against public policy, or that the person attempting to make the assignment, having only an unliquidated claim for damages, has nothing that is capable of assignment." Annot., 40 A.L.R.2d 501 (1955).
In light of the foregoing authorities it is our opinion that under the 1937 amendment to § 2-403, supra, the claim for personal injury of James Murphy would *193 not have survived to his personal representatives and, therefore, was unassignable.
"As a general rule, in the absence of policy or statutory provisions to the contrary, one who suffers injury which comes within the provisions of a liability insurance policy is not in privity of contract with insurer, and cannot reach the proceeds of the policy for the payment of his claim by an action directly against insurer." 46 C.J.S., Insurance, § 1191a, p. 107.
We find the following pertinent provisions in the insurance contract which appellant has made a part of its amended complaint:
"1. Coverages.
"A  Bodily Injury Liability
"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.
...
"Conditions.
...
"4. Action Against Company
"Coverages A and B
"No action shall lie against the company unless, as a condition precedent hereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. (Emphasis supplied.)
"Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled *194 to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a co-defendant in any action against the insured to determine the insured's liability." (Emphasis supplied.)
The amended complaint contains no allegations that either of the conditions precedent provided in the policy have been performed so as to authorize an action against the appellee by the appellant.
Appellant further contends that Paragraph II of its amended complaint is good as against demurrer in that it alleges an assignment by the patient to appellant of his expectancy in a monetary recovery under the liability provisions of appellee's insurance policy and, therefore, the same was a present assignment of money having a potential existence which operated on the fund as soon as it came into existence and was not an assignment of an interest in a cause of action for personal injuries.
Although we find no cases in Indiana (and none from any jurisdiction are cited by either party) where the doctrine of equitable assignment of a thing not in being but having a potential existence has been applied to facts like those here under consideration, such doctrine has been recognized and applied in other types of action in Indiana. Aetna Trust, etc. Co. v. Nackenhorst, Rec. (1919), 188 Ind. 621, 122 N.E. 421; McAdams v. Bailey (1907), 169 Ind. 518, 82 N.E. 1057, 13 L.R.A., N.S. 1003.
In McAdams v. Bailey, supra, the Supreme Court, at page 522 of 169 Ind., stated as follows:
"Courts of equity do not, like courts of law, confine themselves to the giving of effect to assignments *195 of rights and interests, which are absolutely fixed and in esse. On the contrary, they support assignments, not only of choses in action, but of contingent interests and expectancies, and also of things which have no present actual or potential existence, but rest in mere possibility only. In respect to the latter, it is true, that the assignment can have no positive operation to transfer in praesenti, property in things not in esse; but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come in esse; ..." (Emphasis supplied.)
The Supreme Court, in applying the doctrine to money to be earned in the future, stated in Aetna Trust, etc., Co. v. Nackenhorst, Rec., supra, at page 631 of 188 Ind., as follows:
"Where the subject of an equitable assignment is money to be earned in the future, either as wages or by the performance of a contract, such assignment does not become operative until some wages have been earned or something has become payable under the contract. Nothing can be claimed under such an assignment until conditions have arisen which would have enabled the assignor to assert a claim successfully in the absence of such assignment." (Emphasis supplied.) See also: Interstate Finance Corp. v. Dodson, Rec. (1938), 105 Ind. App. 513, 518, 12 N.E.2d 989.
We do not, however, feel it necessary to decide, under the allegations of the amended complaint, whether this assignment was of a cause of action for personal injury or whether it was a present assignment of part of a fund having a potential existence, for the reason that it does not appear that appellant's Paragraph II of its amended complaint states a cause of action against the appellee even under the doctrine of equitable assignment of a thing not yet in being but having a potential existence.
*196 Some other jurisdictions wherein the equitable doctrine was approved and applied to facts similar to those here under consideration and wherein they distinguish between proceeds of judgment or settlement and the cause of action itself, have defined the application of said doctrine.
In Sperling v. McCarthy (D.C.S.D.N.Y., 1956), 142 F. Supp. 780, plaintiff, as attorney for Daughtry, settled the latter's claim for personal injuries and retained an amount equal to an assignment executed by Daughtry to McCarthy as Welfare Commissioner for support and care given Daughtry, and at page 781 the court said:
"It is true that ... the Personal Property Law of the State of New York ... prohibits the assignment of a claim for personal injuries.... However, an assignment of the proceeds of any settlement or judgment that may result from a claim for damages for personal injuries is said to be valid and enforceable in equity, at least, after the law suit ripens into a settlement or judgment." (Emphasis supplied.)
In Goldwater v. Nitzberg (1936), 161 Misc. 847, 292 N.Y.S. 119, plaintiff alleged that one Grimes was treated at a City Hospital for injuries received in an accident and executed an assignment to the hospital of any moneys which he might recover from the party liable for his injuries up to a certain amount. Grimes' attorney, Nitzberg, settled suit. In this case the court said, at page 120 of 292 N.Y.S.:
"Between the execution of the assignment and the receipt of the proceeds of the cause of action, ... plaintiff had a mere equitable assignment and his rights could be protected only by a court of equity. When the amount of the settlement was actually paid over to this defendant, as attorney *197 for Grimes, the equitable title ripened into a legal title sufficient to sustain an action by the assignee." (Emphasis supplied.)
In Richard v. National Transp. Co. (1936), 158 Misc. 324, 285 N.Y.S. 870, the injured party had assigned to a hospital a share of any proceeds he should acquire from any settlement or judgment to be paid by the tort-feasor. The court, in holding this a valid assignment enforceable in equity, at pages 876, 877, said:
"However, until the lawsuit ripened into a judgment, until the chose in action was converted into proceeds, the assignment, though it enjoyed a valid birth, only existed as an equitable assignment. Until such event the plaintiff could hold no legal assignment.
"All that the plaintiff ever secured or held was a right to a portion of prospective proceeds of a settlement or judgment in futuro. No judgment ever came into existence. And until the money came into the hands of the assignor or his agent, there could be no proceeds of a settlement in existence. For until the consideration for any settlement should leave the hands of the defendant, they could not become proceeds; until there was a definite appropriation, the assignment would not attach. Until then the plaintiff's rights must be restricted to those of an equitable assignee, and for their enforcement must invoke the powers of a court of equity."
The pertinent rhetorical paragraphs of Paragraph II of appellant's amended complaint relating to the settlement by the appellee with appellant's assignor, the injured party, read as follows:
"4. On a date prior to the 12th day of July, 1960, the exact date not being known to the plaintiff but well known to the defendant, the said James Murphy made a claim against the said William Gripe for damages because of bodily injury arising out of said accident, which claim was transmitted *198 to the defendant as the insurer of said automobile and the defendant thereafter assumed the defense against such claim as required by said insurance policy contract.
"5. On a date following January 1, 1960 and prior to July 12, 1960, such date being well known to the defendant but not known to the plaintiff, the defendant settled said claim for the amount of $11,500.00 and paid such amount to the said James Murphy and his attorney and thereby failed and refused to honor said assignments to the plaintiff. Concurrently therewith the defendant made payment directly to the said James Murphy of $1,000.00 in full of its liability under the medical payments provisions of said insurance policy contract, such payments totaling $12,500.00."
Our examination of the case law of equitable assignments of all, or part, of things to be acquired in the future convinces us that such assignments, where they are held enforceable in equity, attach to such things or funds only when the things or funds come into being.
Applying the foregoing law to the allegations in appellant's amended complaint, it is apparent that there is no allegation that the defendant-insurer ever became directly liable to the assignor or that there was ever any fund, under these allegations, in existence in the possession of the insurer and, therefore, the funds came into being only when paid over to the assignor. Until that time the funds had, under the allegations of the amended complaint, only a potential existence and were not in esse.
Finding no cause of action stated against this defendant-appellee in either paragraph of plaintiff-appellant's amended complaint we, therefore, find no error in the trial court's ruling sustaining defendant-appellee's demurrers for want of facts.
*199 The judgment is affirmed.
Carson, C.J., Cooper and Ryan, JJ., concur.

ON PETITION FOR REHEARING.
FAULCONER, P.J.
Appellant in its petition for rehearing raises nothing that was not before this court in the consideration of the appeal.
Appellant again urges that this case should follow the holding in Remsen v. Midway Liquors, Inc. (1961), 30 Ill. App.2d 132, 174 N.E.2d 7. We felt at the time of our original opinion that the Remsen case was readily distinguishable from the facts in this case and that its theory was not applicable.
No convincing reason for changing our opinion has been advanced by appellant in its petition for rehearing. Therefore, the petition for rehearing is denied.
Carson, Cooper and Ryan, JJ., concur.
NOTE.  Reported in 197 N.E.2d 773. Rehearing denied 198 N.E.2d 873.
NOTES
[1] Hereinafter referred to as "Hospital."